IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 43011-2015

AMERICAN SEMICONDUCTOR., INC.,  )
an Idaho Corporation,  )
  )
     Plaintiff-Appellant,  )  Boise, February 2017 Term
  )
v.  )  2017 Opinion No. 40
  )
SAGE SILICON SOLUTIONS, LLC, an  )  Filed: April 28, 2017
Idaho corporation; ZILOG, INC., a Delaware  )
corporation; DAVID ROBERTS; GYLE  )  Stephen W. Kenyon, Clerk
YEARSLEY; and WILLIAM TIFFANY,  )
  )
     Defendants-Respondents.  )
  )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, in and for Ada County.  Hon. Thomas F. Neville, District Judge.

The judgment of the district court is <u>affirmed</u>.

Steven B. Andersen, Andersen, Schwartzman, Woodard, Brailsford, PLLC, Boise, argued for appellant.

Gary L. Cooper, Cooper & Larson Chartered, Pocatello, argued for respondents Sage Silicon Solutions, LLC, David Roberts; Gyle Yearsley, and William Tiffany.

Andrea Jo Rosholt, Moffatt Thomas, Boise, argued for respondent Zilog, Inc.

_____

EISMANN, Justice.

This is an appeal out of Ada County from a judgment in an action brought by American Semiconductor, Inc., to recover damages arising out of Zilog, Inc., contracting with Sage Silicon Solutions, LLC, to perform engineering services for it, where that entity was formed by, and the services were provided by, employees of American Semiconductor, Inc.  American Semiconductor, Inc., obtained a jury verdict awarding damages against the engineers and the entity they had formed, but it did not recover against Zilog, Inc.  American Semiconductor, Inc.,

1

appeals, challenging the dismissal of one of its claims against Zilog, Inc., and seeking a new trial on damages against the engineers and their entity. We affirm the judgment of the district court.

## I.
## Factual Background.

David Roberts, Gyle Yearsley, William Tiffany, Russell Lloyd, and Evelyn Perryman were all engineers who worked for Zilog, Inc. ("Zilog"), at its facility in Meridian, Idaho, and they constituted the design team at that facility. They were all laid off in 2009 as part of a reduction in force and were later hired by American Semiconductor, Inc. ("American Semiconductor" or "ASI"). This layoff left only two design engineers employed by Zilog, both of whom were in California.

Mr. Roberts had been the design engineering manager when they were employed by Zilog, and he had been hired by David Staab, one of Zilog's two remaining design engineers. On October 21, 2009, Mr. Roberts e-mailed Mr. Staab to inform him that he and Messrs. Yearsley, Tiffany, and Lloyd had formed Sage Silicon Solutions to perform design work and that they would like to make a quote if Zilog had any design work. On January 28, 2010, Messrs. Roberts, Yearsley, Tiffany, and Lloyd and Ms. Perryman formed Sage Silicon Solutions, LLC ("Sage"), to provide those engineering services.

In 2009, Zilog began looking into the development of a microcontroller. By the end of 2010, the project was defined as developing a low-power microcontroller by enhancing an existing processor core that had been developed by Mr. Yearsley when he had been employed by Zilog. Mr. Staab was lead for that project. He contacted Mr. Roberts, and on February 15, 2011, Zilog entered into a contract with Sage to provide services in designing the microcontroller.

On September 23, 2011, American Semiconductor learned that the engineers were working on the project for Zilog, and it made a demand to Zilog that it cease using the engineers. Zilog ceased doing so around September 25, 2011, and two days later American Semiconductor terminated its relationship with all of the engineers except Mr. Lloyd. Zilog completed the project using its resources and engineering resources from its sister company.

On December 2, 2011, American Semiconductor filed this action against the five engineers, Sage, and Zilog. It alleged two claims for damages against only the engineers, six claims for damages against the engineers and Sage, and claims for declaratory and injunctive relief against all Defendants. Sage and the engineers filed a four-count counterclaim. On July 2,

2

2013, American Semiconductor filed a second amended complaint dropping Mr. Lloyd and Ms. Perryman as named defendants and adding claims against Zilog for intentional interference with economic expectancy, for intentional interference with contract, for violation of the Idaho Trade Secrets Act, and for unjust enrichment.

By the time of trial, American Semiconductor had two claims against Zilog: intentional interference with a contract and intentional interference with an economic expectancy. The district court dismissed the second claim after the close of the evidence, and the jury found no liability on the first claim.

By the time of trial, American Semiconductor had two claims that were only against Messrs. Roberts, Yearsley, and Tiffany: breach of their contractual duty not to compete with American Semiconductor and breach of their fiduciary duty to American Semiconductor. The jury found them liable on both of those claims, but did not award damages on those claims. American Semiconductor also had a claim of intentional interference with its economic expectancy of contracting with Zilog that was asserted against the three engineers and Sage, and the jury found all four of them liable on that claim and awarded damages in the sum of $195,175. Two of the counterclaims filed by Sage and the engineers were submitted to the jury. The jury found that American Semiconductor intentionally interfered with Sage's contract with Zilog, but awarded no damages, and it found no liability on the remaining counterclaim.

The district court awarded Zilog court costs and attorney fees and as between American Semiconductor and the Sage defendants, it determined that there was no prevailing party in the litigation. American Semiconductor then timely appealed.

## II.
### Did the District Court Err in Granting a Directed Verdict Dismissing the Claim Against Zilog of Intentional Interference with an Economic Expectancy?

The elements for a claim of intentional interference with an economic expectancy are:

(1) The existence of a valid economic expectancy; (2) knowledge of the expectancy on the part of the interferer; (3) intentional interference inducing termination of the expectancy; (4) the interference was wrongful by some measure beyond the fact of the interference itself (i.e. that the defendant interfered for an improper purpose or improper means) and (5) resulting damage to the plaintiff whose expectancy has been disrupted.

*Highland Enterprises, Inc. v. Barker*, 133 Idaho 330, 338, 986 P.2d 996, 1004 (1999). The *knowledge* requirement may be satisfied by proving either actual knowledge or knowledge of

facts that would cause a reasonable person to believe that the economic expectancy exists. *Wesco Autobody Supply, Inc. v. Ernest*, 149 Idaho 881, 894, 243 P.3d 1069, 1082 (2010). The *wrongful* requirement may be established by proving either: "(1) the defendant had an improper objective or purpose to harm the plaintiff; or (2) the defendant used a wrongful means to cause injury to the prospective business relationship." *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 286, 824 P.2d 841, 861 (1991). However, Zilog could not interfere with American Semiconductor's expectancy of contracting with Zilog. *Cantwell v. City of Boise*, 146 Idaho 127, 138, 191 P.3d 205, 216 (2008). The interferer would have to be a third party to the expected economic relationship. *Id*.

In its second amended complaint, American Semiconductor alleged that "by soliciting or accepting services from the Individuals [engineers] and Sage, Zilog tortiously interfered with American Semiconductor's prospective economic advantage, including depriving American Semiconductor of the opportunities to earn income from the Individuals' design services." The word *Individuals* was defined to mean Messrs. Roberts, Yearsley, Tiffany, and Lloyd and Ms. Perryman. In its brief opposing Zilog's motion for summary judgment, American Semiconductor explained:

> ASI's tortious interference with prospective economic advantage claim concerns the economic expectancy ASI had for Roberts, Yearsley, Tiffany, Lloyd, and Perryman's *continued employment and loyalty* and, as such, *is not based upon ASI's prospective relationship with Zilog*. Therefore, Zilog cannot defeat ASI's tortious interference claim by attempting to characterize itself as a party to the subject economic relationship.

(Emphases added.)

Even though American Semiconductor asserted that the alleged interference was "not based upon ASI's prospective relationship with Zilog," that was the only evidence of damages offered by American Semiconductor at trial. Its expert testified that he was asked to determine "what ASI has suffered if the jury determines that they would have otherwise gotten the project that's at issue in this case." He calculated that had Zilog contracted with American Semiconductor, it would have received $1,182,488 in revenues and that the loss of that contract resulted in damages from lost profits totaling $1,025,088. The total lost profits included $547,670 that would have been charged for computer-aided-design software ("tools") that American Semiconductor already had the right to use under the license with its vendor. The

4

expert's calculations were based upon what American Semiconductor would have charged to perform all of the work necessary for the project from the beginning through completion of the design of the chip, using the tools that American Semiconductor was licensed to use from its vendor. Much of that work was in addition to the work that Zilog had contracted with Sage to perform. The expert testified that the additional work would have produced $740,182 in revenues for American Semiconductor and that the loss of that work caused American Semiconductor $582,782 in lost profits.

American Semiconductor completed its case in chief during the eighth day of trial, and Zilog moved for a directed verdict. With respect to the claim of intentional interference with a prospective economic advantage, Zilog argued that the economic expectancy had to be with a third party other than Zilog and that the only evidence of an economic expectancy presented during the trial was with Zilog. In response, American Semiconductor stated that "the expectancy, and the relationships at issue are ASI's relationships with its own employees," and it argued the evidence showed that Zilog knew that the engineers were employed by American Semiconductor and that Zilog intentionally interfered with that relationship. Zilog then argued that the evidence showed that it would not have contracted with American Semiconductor because it would have cost too much to do so. American Semiconductor responded to that argument by stating that Zilog hired the engineers through Sage rather than through American Semiconductor. The district court denied the motion, based upon its understanding that "ASI is alleging that Zilog interfered with ASI's economic expectancy with—with Zilog."

All parties rested during the ninth day of trial, and the following day the court held a jury instruction conference. During that conference, American Semiconductor explained that it was not contending that the economic expectancy was contracting with Zilog. It stated that the expectancy was the future economic benefits that American Semiconductor would receive based upon its relationships with the engineers. After that explanation, Zilog responded by pointing out that American Semiconductor did not present any evidence of damages other than interference with the expectancy of contracting with Zilog. The district court then stated that it would reconsider its denial of the motion for a directed verdict and grant it because there was no evidence to support the claim as characterized by American Semiconductor.

By the time of the trial, American Semiconductor had two remaining claims against Zilog: intentional interference with a contract and intentional interference with an economic

expectancy. The district had proposed a special verdict form, with Question No. 6 dealing with interference with an economic expectancy and Question No. 8 dealing with interference with a contract.

The discussion of those two proposed questions began with Mr. Zarian, counsel for American Semiconductor, asking to discuss Question No. 6, and explaining that the economic expectancy was not contracting with Zilog. It was the future benefits that would come to American Semiconductor from it relationships with the engineers. The dialogue was as follows:

> MR. ZARIAN: And may I speak to, then, to Question 6?
> THE COURT: Question No. 6 in the Special Verdict?
> MR. ZARIAN: Yes, Your Honor.
> So, ASI is not—not—*not arguing that Zilog interfered with its—its own relationship that was part of an expectancy.* The—the claim has been, consistently throughout, that the—*the expectancy in the case, with respect to this claim against Zilog, is with ASI's employees and the future benefits that would come from—from those relationships* with its own employees, in particular the individual defendants. But that—that's been the claim throughout, Your Honor.
> . . . .
> THE COURT: Okay. Your problem is with Question 6?
> MR. ZARIAN: Yes, Your Honor.
> THE COURT: And the question is: Did Zilog intentionally interfere with American Semiconductor's economic expectancy of contracting with Zilog?
> You're saying that's not the question?
> MR. ZARIAN: No, Your Honor – that's right, Your Honor.
> The—the way we defined that claim is—is *expectancy of future pecuniary gain from its relationships with its employees*, separate and apart, distinct from the Employee Confidentiality Agreement, which is the subject of Question 8.
> . . . .
> MR. ZARIAN: Well, our—*our claim, with respect to the economic expectancy of contracting with Zilog, is against Sage and the individual defendants*, Your Honor.

(Emphases added.)

The district court sought further clarification. It apparently thought that if the economic expectancy with respect to contracting with Zilog was only against Sage and the engineers, then American Semiconductor's claim against Zilog must only be its claim of intentional interference with contract. Mr. Zarian again explained that it had two claims against Zilog, but the interference with economic expectancy claim against Zilog was interfering with "an economic expectancy in the future benefit of the relationships with our employees." The dialogue was as follows:

6

THE COURT: So, you're saying 6—

MR. ZARIAN: So—

THE COURT: —you—you're—you only have one claim against Zilog then?

MR. ZARIAN: We have two at the moment, Your Honor. But—but I think, perhaps, the question we're discussing together here is 4, *Question 4, which is, indeed, an economic expectancy of contracting with Zilog, but—but that's a claim against the Sage defendants*.

And so, *the claim against Zilog is—is—has always been*, Your Honor—I mean, the way we've articulated it, is *an economic expectancy in the future benefit of the relationships with our employees*.

(Emphases added).[1]

The district court expressed surprise as to this characterization of the economic expectancy claim against Zilog. The proposed jury instructions submitted by American Semiconductor regarding that claim did not identify the economic expectancy at issue. The court stated that it had received two versions of the special verdict form, and both of them had asked whether Zilog had intentionally interfered with American Semiconductor's economic expectancy of contracting with Zilog. Mr. Zarian explained that it had sent over a special verdict form that deleted the reference to Zilog and that the economic expectancy was, as alleged in its second amended complaint, "depriving ASI of the opportunities to earn income from the individuals' design services." The dialogue was as follows:

THE COURT: Did—did Zilog intentionally interfere with American Semiconductor's economic expectancy of contracting with Zilog?

We—we had—I've seen two versions of this proposed Special Verdict Form, and I haven't had—and this has been in both of them, and I haven't—I haven't heard this until now.

MR. ZARIAN: The comments we sent that deleted, Your Honor, did make that change; the—the ones that Mr. Luvai sent.

But, Your Honor, paragraph 90 of our Second Amended Complaint, which is the operative complaint, I—I think we do articulate the theory we've adhered to throughout, you know, summary judgment briefing and—and other briefing in this case.

And—and it reads, Your Honor, that—that Zilog tortiously interfered with ASI's prospective economic advantage, including depriving ASI of the opportunities to earn income from the individuals' design services.

MS. ROSHOLT: For Zilog.

MR. ZARIAN: No. It doesn't say that; it just says individuals' design services.

---

[1] The reference to the "Sage defendants" meant Sage and the three engineers.

Opposing counsel then pointed out that American Semiconductor had not presented any evidence of damages regarding the expectancy of a future economic benefit from its relationship with the engineers. The district court agreed that there was no evidence of interference with an economic expectancy regarding anyone other than Zilog. The court stated to Mr. Zarian that American Semiconductor could either drop this claim or proceed with it as stated in the court's special verdict form.

Later during the jury instruction conference, and after discussing it with his client, Mr. Zarian stated that it could not try the claim as worded by the court's special verdict form. The modified proposed special verdict form, which American Semiconductor had sent over the night before, simply asked with respect to this claim, "Did Zilog tortiously interfere with American Semiconductor's prospective economic advantage?" The court stated that this question would not help the jury know what the claim was, and Mr. Zarian responded that he would tell them in his closing argument.[2] Ms. Rosholt argued that there was no evidence of any damage from an alleged interference with American Semiconductor's relationship with its employees. The court concluded that it would revisit the motion for a directed verdict and grant it because there was no evidence supporting the claim as characterized by American Semiconductor.

On appeal, American Semiconductor seeks to change the nature of its claim from interfering with the expectancy of future pecuniary gain from the engineers to interfering with the expectancy of contracting with Zilog. It states in its opening brief that "by sending work to the Engineers, Zilog did exactly what ASI reasonably expected that Zilog would do when ASI hired them"; that Zilog "necessarily interfered with the reasonable expectation ASI had in attracting this design work through the employment of the Engineers"; and that "ASI presented extensive testimony from its damages expert, Richard Hoffman, who testified as to the profits ASI would have realized from contracting with Zilog on the project."

During the jury instruction conference, American Semiconductor expressly stated that the economic expectancy at issue was not contracting with Zilog. It obviously made that argument

_____

[2] The proposed jury instructions submitted by both American Semiconductor and Zilog included generic instructions setting forth the elements of intentional interference with a contract and intentional interference with an economic expectancy. Their proposed instructions did not identify the contract or the economic expectancy at issue. In the jury instructions that it gave to the jury setting forth the elements of those claims, the district court correctly identified the contract and economic expectancy at issue, which is how the jury should be instructed to avoid confusion or uncertainty as to what the claim actually is.

to the district court because, as stated above, Zilog could not interfere with American Semiconductor's expectancy of contracting with Zilog. *Cantwell*, 146 Idaho at 138, 191 P.3d at 216. "An appellant is bound by the issues and theories upon which the case was tried below. Although a judgment may be sustained upon any legal theory, a new theory cannot be employed on appeal to attack the judgment." *Clements Farms, Inc. v. Ben Fish & Son*, 120 Idaho 185, 207, 814 P.2d 917, 939 (1991). Therefore, we will not address this alleged error on appeal, and we affirm the judgment dismissing American Semiconductor's claims against Zilog.

## III.
## Is Zilog Entitled to an Award of Attorney Fees on Appeal?

Zilog seeks an award of attorney fees on appeal pursuant to Idaho Code section 12-121. An award of attorney fees under that statute will be awarded to the prevailing party on appeal only when this Court is left with the abiding belief that the entire appeal was brought, pursued, or defended frivolously, unreasonably, or without foundation. *McGrew v. McGrew*, 139 Idaho 551, 562, 82 P.3d 833, 844 (2003); *Benz v. D.L. Evans Bank*, 152 Idaho 215, 231–32, 268 P.3d 1167, 1183–84 (2012). The appeal against Zilog was brought without foundation, and therefore we award Zilog reasonable attorney fees on appeal.

## IV.
## Is American Semiconductor Entitled to a New Trial on Damages Against the Engineers and Sage?

American Semiconductor contends that it is entitled to a new trial on damages against the engineers and Sage based upon the district court's ruling on discovery and evidentiary issues. Zilog used tools licensed by Synopsys, Inc. ("Synopsys"), to design the computer chip for the microcontroller. American Semiconductor sought production of the software license during discovery, and Zilog objected. The district court ruled that the license need not be produced because it was not likely to lead to the discovery of admissible evidence. American Semiconductor later sought to exclude any evidence regarding the Synopsys license because Zilog intended to present evidence that it would never have contracted with American Semiconductor because it would have been too expensive, in large part due to the amount that American Semiconductor would have charged for it to use the tools it was licensed to use. The court denied American Semiconductor's motion to exclude the evidence. American Semiconductor sought an award of $1,025,088 in damages against the engineers, and it contends

that the court's errors resulted in the jury awarding only $195,175. In order to address this issue, it is necessary to examine each step of what occurred in detail.

**A. Denying motion to compel production of the Synopsys license.** On April 18, 2014, American Semiconductor filed a motion to compel discovery seeking, among other things, copies of contracts with CAST, Inc. ("CAST"), Cadence Design Systems, Inc. ("Cadence"), and Synopsys. In the memorandum supporting its motion, American Semiconductor simply argued, "Because these requested license records relate to the nature and manner in which the Sage defendants [the engineers and Sage] provided certain design and related services to Zilog, they are relevant and Zilog has no justifiable basis for withholding their production." In its reply brief in support of its motion, American Semiconductor argued that the licenses were calculated to lead to the discovery of admissible evidence because they would tend to show that the engineers collaborated with Zilog through the unauthorized use of this third-party software.

In support of the motion, American Semiconductor presented several pages of the deposition of Mr. Staab taken on March 4, 2014, in which he testified that Mr. Tiffany worked under the CAST license by remotely connecting to computers in the Zilog facility in Milpitas, California, through a virtual private network. American Semiconductor's counsel quoted a document stating that the CAST software "can only be used on computers within the listed Zilog sites (Milpitas)." He apparently construed that to mean that the computers and the person using them had to be within that site. When asked whether he ever discussed that with CAST, Mr. Staab answered that he believed the final license agreement with CAST included Sage, but he would have to check. American Semiconductor did not believe that the CAST license, or the licenses with Cadence and Synopsys, would authorize use of the software through a virtual private network or that the engineers were authorized users of the software.

The motion was heard on May 2, 2014. During the oral argument on the motion, Mr. Zarian argued on behalf of American Semiconductor that it believed that "these engineers may well have been working under these software agreements and in dir—direct violation of them, to do the very work that is at issue in this case." He also argued:

> The theory—one theory of the case, for ASI, is that Zilog went to the very engineers, and to the very people, and knowingly so, that would allow it, basically, to save costs, to cut corners, to do this on the cheap, because they were going after the people that had key information, had key trade secrets, had prior experience with Zilog's own systems. The only people that could allow them to

develop this new project, their first in four years, for a micro-controller for—for Zilog on the cheap.

In support of its motion to compel, American Semiconductor had not presented any evidence regarding what Zilog paid the engineers, whether that pay was standard in the industry, or what American Semiconductor would have charged for the same work.[3] The assertion was that because of their prior experience with Zilog, the engineers could perform the work in less time than it would take other engineers.

In response, Zilog argued that the three licenses at issue contained confidentiality agreements prohibiting the disclosure of the agreements without the vendor's consent; that whether Zilog breached the licensing agreements by allowing the engineers to use the vendor's software is not relevant to this case; and that because American Semiconductor had never submitted a bid to do any work for Zilog, there is no way that Zilog could have sought to undercut American Semiconductor's price. Zilog also argued that American Semiconductor had issued a subpoena to Synopsys seeking a copy of the license agreement, and Synopsys had objected on the ground that American Semiconductor was seeking confidential information. Zilog concluded its argument by stating that American Semiconductor, "in its own papers, has objected to producing agreements between ASI and third parties, on the grounds that they're protected by confidentiality provisions that prohibit ASI from disclosing those documents."

In rebuttal, American Semiconductor asserted that the Synopsys license was relevant because it showed Zilog's intent with respect to the torts it was alleged to have committed.

> MR. ZARIAN: *We think the relevance is clear, Your Honor. It goes to the intent.* Zilog's taking the position that they were completely surprised that these individuals, as it turned out, were working for ASI all along. The facts show otherwise. The facts show that there was a pattern, there was a conduct— pattern of conduct here by which they affirmatively made a decision to cut costs, to cut corners, and to, in this case, violate these agreements in the very project through which they violated and breached, collectively, the duties that they all had to ASI, and that much is set forth in our pleadings.

(Emphasis added).

---

[3] During the trial, American Semiconductor's chief financial officer testified that Zilog had paid the engineers $65.00 per hour for the work they had done and that on average American Semiconductor paid its design engineers $39.50 per hour plus 18.5% benefits. That would make their hourly pay $46.81. She also testified that American Semiconductor would charge a customer for the engineers' design services an additional 32% for overhead and 17% for profit, which could bring the hourly rate to about $72.00.

The district court denied the motion to compel production of the licenses. It stated, "The Court is not convinced, at this point, that the requests for software—the software licensing agreements between Zilog and its vendors is reasonably calculated to lead to the discovery of admissible evidence."

On appeal, the only license at issue is the Synopsys license. Rule 26(b) of the Idaho Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Assuming that the Synopsys license would, as alleged, have led to the discovery of evidence that the license did not authorize the engineers to work remotely under the license, or to work at all under the license, such evidence would not have been admissible to show Zilog's intent.

The relevant intent for interference with an economic expectancy is intentional interference with a known economic expectancy, *Todd v. Sullivan Constr. LLC*, 146 Idaho 118, 125, 191 P.3d 196, 203 (2008), and the relevant intent for interference with a contract is intentional interference with a known contract, *Barlow v. Int'l Harvester Co.*, 95 Idaho 881, 893, 522 P.2d 1102, 1114 (1974). Assuming that Zilog breached the Synopsys license, that may give Synopsys a claim against Zilog for breach of contract, but such conduct would not be relevant to show that Zilog either intentionally interfered with American Semiconductor's contracts with the engineers or intentionally interfered with American Semiconductor's expectancy of receiving future benefits from its relationship with those engineers.

On appeal, American Semiconductor does not present any argument that the district court erred by refusing to grant the motion to compel *based upon the information and arguments presented to the court in connection with the motion.* Its only argument with respect to the court's ruling on the motion to compel is, "Without reviewing any documents at issue, the District Court denied the motion, stating it was 'not convinced,' at that time, that the requests were reasonably calculated to lead to admissible evidence." Instead, American Semiconductor points to later events to show the relevance of the license. The events that it recites are declarations of Mr. Staab filed on July 14, 2014, and on November 7, 2014; the deposition testimony of Zilog's damages expert taken on November 5, 2015; and events that occurred during the trial, commencing with Zilog's opening statement on January 6, 2015.

On July 14, 2014, Mr. Staab filed a declaration in opposition to American Semiconductor's motion to add a claim for punitive damages. In his declaration, he stated that he would not have contracted with American Semiconductor because their price to do the work would have been too high. At some point during the litigation, American Semiconductor had presented a quote setting forth what it would have charged to provide the engineer's services for which Zilog paid Sage $124,000. In his declaration, he stated that "[t]he "TOTAL PRICE" on the ASI Quote is $454,801 for 1908 hours of design engineering, which is the equivalent of over $238 per hour for design engineering services" and that he would not have retained American Semiconductor to provide any such services at that rate.

On November 5, 2014, American Semiconductor took the deposition of Zilog's damages expert, during which he testified about his disagreement with the opinions expressed by American Semiconductor's damages expert during his deposition taken on October 30, 2014. According to Mr. Zarian, a "major component" of the damages calculated by American Semiconductor's expert was the cost of tools, and the expert's opinion about the tools had not been disclosed until August 2014. Zilog's expert testified in his deposition that he had been told that Zilog did not incur any additional cost for the engineers to use tools already licensed by Zilog. Therefore, his damages calculation did not include any cost for those tools.

On November 7, 2014, Zilog filed the declaration of Mr. Staab in opposition to American Semiconductor's motion in limine. In that declaration, he stated:

> The primary CAD [computer-aided-design] software used by Sage on the Project were those licensed to Zilog by Synopsys, Inc. ("Synopsys"). Zilog's parent company, IXYS Corporation ("IXYS"), negotiated and obtained a license specifically permitting Dave Roberts, Russell Lloyd, Evelyn Perryman, William Tiffany and Gyle Yearsley, to use the Synopsys CAD software, and Synopsys did not require any additional cost for the inclusion of those individuals in the license.

On January 6, 2015, Zilog's counsel stated during his opening statement:

> ASI wanted to charge Zilog—frankly, ASI wanted to charge Zilog over $800,000 for those tools. And Zilog said no; we—we don't want to buy those tools—or Zilog would have said if they had received a bid or a quote. Zilog had the tools it needed, and didn't want to pay ASI for those tools.

Whether or not the district court erred in denying the motion to compel must be based upon the information and arguments presented to the court in support of the motion. The court was not required to be prescient. When it denied the motion to compel, the district court stated

13

that it was not convinced, *at this point*, that the licenses were reasonably calculated to lead to the discovery of admissible evidence. American Semiconductor did not thereafter ask the Court to reconsider the motion to compel based upon the defenses thereafter raised by Zilog or the engineers. American Semiconductor has not presented any argument showing that the district court erred in denying the motion to compel based upon the information and argument presented to the court in support of that motion.

**B. Reviewing the Synopsys contract *in camera*.** American Semiconductor alleges that the district court erred by reviewing the Synopsys contract *in camera*. It asserts: "The District Court's determination concerning the relevance of the Synopsys License was the product of an opaque in camera process that deprived ASI of an opportunity to be properly heard on a key issue at trial with far-reaching implications." This assertion misstates what actually occurred. The court's review of the Synopsys contract was not done in connection with determining whether the license was relevant. An addendum to the license was presented to the court for *in camera* review during oral argument on one of American Semiconductor's motions in limine.

On October 31, 2014, after discovery had closed, American Semiconductor filed its Motion in Limine No. 11 seeking to preclude "defendants from offering arguments or assertion that rely, in whole or in part, on any licensing agreement that remain undisclosed as of the filing of this motion." The motion in limine was to preclude evidence regarding the license, not to determine whether the license was relevant.

As a ground for the motion, American Semiconductor argued in its supporting memorandum that "seeking to avoid liability for ASI's interference claims, both the Sage Defendants and Zilog have argued that Zilog would not have contracted with ASI because the total project price that ASI would likely have quoted (if Zilog had dealt with ASI directly) would have been too high." In support of that argument, American Semiconductor cited the declaration of Mr. Staab filed on July 14, 2014.

American Semiconductor's motion was heard on December 9, 2014, along with eight other motions in limine it had filed. The trial was to commence on January 5, 2015. During the hearing on its Motion in Limine No. 11, American Semiconductor's counsel argued that the arguments and defenses now being advanced were "that Zilog would not or could not have contracted with ASI because the project price that ASI would have likely quoted would have been too high, whereas the suggestion is that the cost was negligible or nonexistent for use of

14

these tools by the Sage individuals." He asserted that "if, in fact, the defendants are allowed to make arguments based on this evidence that was never produced, that could never be challenged, or examined, or tested through depositions and otherwise, then there will be, indeed, very significant prejudice."

Zilog then provided the district court with a copy of a Synopsys contract for *in camera* review. Counsel for Zilog stated that the only design tools used in connection with the project were licensed by Cadence and Synopsys, that they had written to both entities and requested permission to provide their contracts to the court for *in camera* review, and that Cadence refused and Synopsys gave permission to do so.

The district court had a further dialogue with American Semiconductor's counsel. The court stated that it did not remember the cost of the licenses being the focus of the motion to compel. There was further discussion, during which American Semiconductor's counsel stated: "There were discovery requests and requests for production that—that sought not just the agreements, but also the cost information, communications about them, and the like. None of that was produced." The motion to compel had not included discovery requests seeking "the cost information, communications about them, and the like." The court and American Semiconductor's counsel then had the following dialogue:

> THE COURT: You wanted a copy of the license agreement; I said, no. Now you're focusing on the costs of procuring the tools, and I don't remember that coming—being the focus of your motion to compel.
> MR. ZARIAN: But it's also the agreement, Your Honor, because the agreement sets forth—and the ones that—a few that we have do as well—geographic limitations, use limitations. And so, they—
> THE COURT: That was more the focus of the issues last spring, as who can use this, where can they physically use it, do they have to go to the employer's site to use it, what state is it in, how many users, those kinds of things, it wasn't the cost of the tools that—that was the focus of the motion, as I recall.
> MR. ZARIAN: I think that's fair, Your Honor.
> . . . .
> THE COURT: But the cost wasn't—I'll take a look, in camera, at the copy of the license agreement, but I don't remember this being the focus, Mr. Zarian. I—my recollection is you wanted a copy of the license agreement.
> MR. ZARIAN: We wanted a copy of—of that license agreement.

At the conclusion of the arguments on this motion in limine, the court reserved ruling on it.

On January 8, 2015, during the fourth day of the jury trial, American Semiconductor renewed its motion in limine. The district court stated with respect to the Synopsys contract that

15

it did not "find anything in there which addresses the issue of an incremental or increased cost to include or add contractors or consultants to the total amount of fees that's charged." The court ultimately denied the motion in limine because "I see it as an extreme remedy to a—a failed motion to compel made nine months ago, never revisited." American Semiconductor has not challenged on appeal the court's denial of its motion in limine.

After the district court ruled, American Semiconductor's counsel requested the date of the contract. The court stated that it would consider the request, but they needed to get back in the courtroom because the jury had been waiting for a long time. Later that day during a recess, the court stated, over Zilog's objection, that "the Purchase Agreement says it was effective as of September 29, 2011—and it actually is signed the day before that, September 28, 2011—as an addendum to the original Agreement." The court also stated that there was a schedule of payments "starting in October of 2011, and going into July of 2014." American Semiconductor did not respond by making any additional request with respect to the contract.

The court's *in camera* review had nothing to do with the court's ruling on the relevance of the license. It had not been asked to do that. It had been asked to rule on American Semiconductor's motion in limine seeking to preclude any evidence or arguments regarding the license. American Semiconductor did not object to the district court reviewing the license *in camera*, and it therefore cannot raise that as an issue on appeal. *Kirkman v. Stoker*, 134 Idaho 541, 544, 6 P.3d 397, 400 (2000).

**C. Excluding testimony regarding the Synopsys license.** American Semiconductor asserts that the district court erred by "precluding ASI from eliciting any evidence that may be pertinent to licensing terms, generally, and the Synopsys License, in particular, based *exclusively* upon an untenable relevance determination amount to reversible errors." It lists four instances in which the court allegedly did so.

"Error may not be predicated upon a ruling which admits or excludes evidence unless the ruling is a manifest abuse of the trial court's discretion and a substantial right of the party is affected." *Burgess v. Salmon River Canal Co.*, 127 Idaho 565, 574, 903 P.2d 730, 739 (1995). "[T]he burden is on the person asserting error to show an abuse of discretion." *Merrill v. Gibson*, 139 Idaho 840, 843, 87 P.3d 949, 952 (2004). "A trial court does not abuse its discretion if it (1) correctly perceives the issue as discretionary, (2) acts within the bounds of discretion and applies the correct legal standards, and (3) reaches the decision through an

16

exercise of reason." *O'Connor v. Harger Constr., Inc.*, 145 Idaho 904, 909, 188 P.3d 846, 851 (2008).

**1. Precluding American Semiconductor from allowing its chief financial officer to explain the difference between the $124,000 charged by Sage and the $454,000 that American Semiconductor would have charged for that same work.** During the redirect examination of American Semiconductor's chief financial officer, she was asked about the difference between the American Semiconductor quote of $454,000 and the $124,000 that Zilog paid Sage for the services of the engineers. The exchange was as follows:

> Q. BY MR. ZARIAN: Mr. Cooper asked you if this, in fact, showed that ASI would have bid or charged $454,000 for something that was done for much less, in fact 124,000; do you remember that question?
> A. Yes, I do.
> Q. You said at the time that there was a good explanation; do you remember saying that?
> A. Yes, I do.
> Q. What is the explanation?
> MR. HUSCH: Objection, Your Honor.
> THE COURT: What's the nature of the explanation? Do we need—
> MR. HUSCH: I anticipate that we may be getting very close to a topic of one of the Court's motions in limine.
> THE COURT: All right. Is that—is that ASI's motion?
> MR. HUSCH: It is, Your Honor.
> THE COURT: All right. We weren't going to do this without having the Court be involved in advance.
> So, I'll sustain objection—
> MR. ZARIAN: Your Honor, if I may, I—
> THE COURT: —at this point.
> MR. ZARIAN: —I was going to suggest that perhaps the door's been opened, and my—just this one question is the only one I have to ask, if to have the witness allowed—
> THE COURT: And I've sustained the objection.
> You may not—
> MR. ZARIAN: Okay.
> THE COURT: —ask the question without taking it up in—in advance, as we agreed, before the topic is raised, outside the presence of the jury.

The district court did not preclude American Semiconductor from presenting the evidence it desired. It merely held that the admissibility of that area of inquiry must first be addressed outside the presence of the jury, as the parties had agreed. American Semiconductor

17

has not pointed to anything in the record showing that it then brought the issue up outside the presence of the jury.

      **2. Precluding American Semiconductor's industry expert from opining as to tools costs.** American Semiconductor contends that the district court precluded its expert from opining as to the cost of tools. During the seventh day of trial, American Semiconductor wanted to project for the jury slides stating ten opinions of one of its expert witnesses while the expert was testifying. Without the district court yet hearing any of the expert's testimony, American Semiconductor wanted the court to make a ruling on the admissibility of the opinions stated in the slides. The court questioned whether the slides would be more appropriate for closing argument, and American Semiconductor's counsel responded that it was his practice to use such slides during the examination of an expert to help the jury understand technical matters. The court mentioned one slide that did not concern something that was difficult to understand, and Zilog's counsel brought up slide No. 10, which stated, "Insufficient supporting data has been provided to show that Zilog would not have incurred additional tool costs in contracting with Sage on the 6482 project [the project at issue]." After the court and the parties discussed the content of the slide, the court stated: "Saying that you're—you're not having been provided the cost of the tools, which they paid—now, I—I'm just—I'm not comfortable with that opinion No. 10 is appropriate. And the Court, at this point, would be inclined to perhaps sustain an objection to this opinion." As the discussion continued about the slides, the court stated, "I don't think No. 10 is an expert opinion." As the court continued reviewing the slides, it commented that some of them did not appear to be expert opinions, but simply statements about contested facts or argument. After further discussions, the court stated that it did not think the expert should be asked at all about slide No. 10.

      On appeal, American Semiconductor simply states that the district court's decision regarding the opinion stated in slide No. 10 constituted "precluding ASI's industry expert from opining as to tools costs." The slide did not constitute the expert opinion about tools costs. It constituted the expert expressing an opinion regarding the quantum of proof necessary to show that Zilog did not incur additional costs for tools in the project. To show an abuse of discretion, one of the factors that American Semiconductor must show is that court did not act within the bounds of discretion and apply the correct legal standards. American Semiconductor has not provided any argument or authority showing that the slide contained an admissible opinion. *See*

18

*State v. Ellington*, 151 Idaho 53, 66–67, 253 P.3d 727, 740–41 (2011); *Warren v. Sharp*, 139 Idaho 599, 606, 83 P.3d 773, 780 (2003).  Therefore, it has not shown that the court abused its discretion.

**3.    Precluding American Semiconductor from cross-examining Mr. Staab with regard to how much Zilog paid for tools given that the Synopsys license was executed after the engineers were taken off the project.**  After discussing the slides, the parties discussed other issues outside the presence of the jury.  Mr. Zarian stated that he intended to cross-examine Mr. Staab about what they had paid for the tools.  The following exchange then occurred between him and the district court.

> THE COURT:  And that will be a—a big deal because I've—I've said that that's not relevant because they already had the—they've already had—had the tools that they were going to insist be used on this work by Sage.
> And so, I don't see how you make the case that they would've had to buy them again.  I—that's just—
> MR. ZARIAN:  And just on that point, Your Honor, here's what's—what's really puzzling be—because what they—the Court will recall, they were pulled off the job on September 27, 2011.  The agreement that was given to the Court was signed the next day, after they were pulled off the job.
> THE COURT:  These—these are periodically signed, as Counsel well know.  I mean, this thing all relates back to a 2004 license, and—and they're periodically reviewed within whatever the term is.  So, I—I'm not sure that that is a legitimate point of view.
> Well, in any event, we'll save that for Mr. Staab's testimony.  We—we need to get the jury in here and—
> MR. ZARIAN:  Your Honor?
> THE COURT:  —proceed with Mr. Holland.
> MR. ZARIAN:  May we have just five minutes?
> THE COURT:  We need a humanitarian break; yes, sir.
> MR. ZARIAN:  Thank you and—
> THE COURT:  Yes, sir.
> MR. ZARIAN:  —thank you, Your Honor.

During this exchange, the district court did not make any ruling on whether American Semiconductor could cross-examine Mr. Staab regarding the cost of the tools that Zilog used on the project.  Because the court did not make any ruling on the admissibility of the evidence, there is no issue for appeal.  *Krinitt v. Idaho Dep't of Fish & Game*, 159 Idaho 125, 131, 357 P.3d 850, 856 (2015).

19

**4. Precluding American Semiconductor from cross-examining Mr. Staab with regard to how much Zilog paid for tools.** During cross-examination of Mr. Staab, Mr. Zarian asked how much Zilog paid for the tools. The following occurred:

> Q. BY MR. ZARIAN: Yes. The reason Sage was cheaper, for example, than what you think it would have cost to contract with ASI, is because Sage had no overhead; true?
> A. My recollection of the ASI exhibit was that a large portion of it was CAD tools. And, of course, Sage didn't have a CAD tool cost. Overhead would, perhaps, also come into play.
> Q. Well, how much did Zilog actually pay for the tools actually used by Sage while working on this project?
> MS. ROSHOLT: Objection, Your Honor.
> THE COURT: Mr. Zarian, this covers ground that—that we've—we've talked about before, as I understand it. And this is the—the stuff of a—a Confidential Agreement that the Court has ruled on already.
> Counsel approach, please.
> (Bench conference.)
> THE COURT: Move on to your next question, please.
> MR. ZARIAN: Thank you very much, Your Honor.

"This Court does not review an alleged error on appeal unless the record discloses an adverse ruling forming the basis for the assignment of error." *Ada Cnty. Highway Dist. v. Total Success Investments, LLC*, 145 Idaho 360, 368, 179 P.3d 323, 331 (2008). "'We do not presume error on appeal; the party alleging error has the burden of showing it in the record.'" *VanderWal v. Albar, Inc.*, 154 Idaho 816, 822, 303 P.3d 175, 181 (2013) (quoting *Miller v. Callear*, 140 Idaho 213, 218, 91 P.3d 1117, 1122 (2004)). Because the record does not reflect what occurred during the bench conference, American Semiconductor has failed to provide a record showing any error in this instance.

American Semiconductor has failed to show any error that would entitle it to a new trial on damages. Therefore, we affirm the award of damages against Sage and the engineers.

## V.
### Did the District Court Abuse Its Discretion in Determining that There Was No Prevailing Party in the Litigation Between American Semiconductor and the Engineers and Sage?

American Semiconductor and the engineers and Sage sought an award of costs and attorney fees. The court found that there was no prevailing party in the litigation between these parties. American Semiconductor contends that it erred in that determination.

"In determining the prevailing party, the court examines the final result obtained in relation to the relief sought, whether there were multiple claims or issues, and the extent to which

20

either party prevailed on each separate issue or claim." *First State Bank of Eldorado v. Rowe*, 142 Idaho 608, 615, 130 P.3d 1146, 1153 (2006). In addition, when there are claims and counterclaims between opposing parties, "the prevailing party question is examined and determined from an overall view, not a claim-by-claim analysis." *Eighteen Mile Ranch, LLC v. Nord Excavating & Paving, Inc*., 141 Idaho 716, 719, 117 P.3d 130, 133 (2005).

The district court recited the above statements of law and reviewed the claims initially asserted between these parties, the claims ultimately submitted to the jury, the amounts sought on those claims, and the jury's resolution of those claims. Ultimately, the court concluded that the most significant factor was that American Semiconductor sought to recover $1,025,087 in damages against the engineers and Sage, but only recovered the sum of $195,175, which amounted to 19% of its claimed damages.

"The district court's determination of prevailing party status for the purpose of awarding attorney fees and costs is within the court's sound discretion, and will not be disturbed on appeal unless there is an abuse of discretion." *Hobson Fabricating Corp. v. SE/Z Constr., LLC*, 154 Idaho 45, 49, 294 P.3d 171, 175 (2012). "[T]he burden is on the person asserting error to show an abuse of discretion." *Merrill*, 139 Idaho at 843, 87 P.3d at 952. "A trial court does not abuse its discretion if it (1) correctly perceives the issue as discretionary, (2) acts within the bounds of discretion and applies the correct legal standards, and (3) reaches the decision through an exercise of reason." *O'Connor*, 145 Idaho at 909, 188 P.3d at 851.

American Semiconductor first contends that the district court incorrectly stated that it only recovered on one claim against the engineers and Sage. Question No. 1 on the special verdict asked with respect to each of the engineers, "Did some or all of the following defendants breach paragraph 7 (Duty Not to Compete) of the Employee Confidentiality Agreement?," and the jury answered "YES" as to each engineer. Question No. 2 on the special verdict form asked with respect to each of the engineers, "Did some or all of the following defendants breach a fiduciary duty of loyalty to American Semiconductor, Inc.?," and the jury answered "YES" as to each engineer. Question No. 3 then asked: "If you answered 'NO' to all of the above questions, do not answer this question. Instead, proceed to question 4. If you answered 'YES' to any of the above questions, what is the total amount of damages, if any, sustained by American Semiconductor, Inc. that were caused by the breach?" The jury initially entered $195,175, but crossed out that figure and wrote "0."

Question No. 4 asked with respect to each of the engineers and Sage, "Did some or all of the following defendants intentionally interfere with American Semiconductor, Inc.'s economic expectancy of contracting with Zilog, Inc.?," and the jury answered "YES" with respect to each of those Defendants. Question No. 5 asked: "If you answered 'NO' to question 4, do not answer this question. Instead, proceed to question 6. If you answered 'YES' to question 4, what is the total amount of damages, if any, sustained by American Semiconductor, Inc. that resulted from the intentional conduct of any or all of the Sage Defendants?" The jury entered $195,175.

In its recitation of the jury's award, the district court stated that the jury did not award American Semiconductor any damages with respect to the claims set forth in Questions 1 and 2. American Semiconductor contends on appeal that the district court erred because the jury obviously intended for the damage award to apply to those claims also. They base that argument upon the court's Instruction No. 28, which stated, "If you determine that a party is entitled to recover under two claims for the same injury, you should not award more than is required to adequately compensate the party for that one injury."

The verdict is ambiguous as to whether the $195,175 award was for only interference with American Semiconductor's economic expectancy or for all three claims. The jury instruction stated that if the jury found that a party was entitled to recover "under *two claims* for the same injury," not "*more than one* claim for the same injury." Questions 1 and 2 set forth two claims and asked the jury to award damages if it found liability on either or both of them. The jury instruction did not, by its terms, apply to the claim in Question No. 4. The jury did not simply delete the award of $195,715 in Question No. 3; it deleted the award and inserted "0" in its place. Question No. 5 asked the jury to award damages only if it answered "YES" to Question No. 4, not to Question No. 1, No. 2, or No. 4. Thus, the verdict could be read as the jury deciding to award no damages for the claims set forth in Questions 1 and 2. Conversely, the jury could have concluded Instruction No. 28 should apply to an award under all three claims and intended the award under Question No. 5 to apply to findings of liability in answering Questions 1, 2, and 4.

The district court's interpretation of the jury verdict was not unreasonable. Therefore, that interpretation does not show an abuse of discretion.

Finally, American Semiconductor argues that because the engineers and Sage did not recover on their counterclaims and American Semiconductor received "significant success" on

its claims, it is the prevailing party as a matter of law. It relies upon this Court's opinion in *Eighteen Mile Ranch, LLC v. Nord Excavating & Paving, Inc.*, 141 Idaho 716, 117 P.3d 130 (2005). That case does not so hold.

In *Eighteen Mile Ranch*, the plaintiffs contracted with a Company to do a construction project on their ranch. *Id.* at 718, 117 P.3d at 132. The parties got into a dispute, and the plaintiffs terminated the Company's involvement in the project before it was complete. *Id.* They then sued the Company, its two owners, one owner's wife, and the Company bookkeeper, and the Company filed a counterclaim seeking $12,000 for services provided. *Id.* The plaintiffs' claims against two of the individuals were dismissed before trial. The matter was tried to jury, and it found in favor of the Company on the plaintiffs' complaint and awarded the company $1,054.38 in its counterclaim. *Id.* No liability was established against the remaining individuals. *Id.* The owners and the company filed a memorandum of costs seeking an award of court costs and attorney fees, and the district court denied that request on the ground that there was no prevailing party. *Id.*

On appeal, we held that the district court had abused its discretion for three reasons. First, the district court misconstrued the applicable standard for evaluating the prevailing party. It quoted portions of an opinion from the Court of Appeals and concluded that dismissal of a claim against a party before trial does not necessarily make that party a prevailing party and that successfully asserting or defending a single claim does not mandate the award of attorney fees to the prevailing party on that claim. *Id.* at 719, 117 P.3d at 133. The court erred by not determining the prevailing party from an overall view, but rather based upon a claim-by-claim analysis. *Id.* Second, with respect to the company, "the district court focused too much attention on the Company's less than tremendous success on its counterclaim and seemingly ignored the fact that the Company avoided all liability as a defendant. The district court improperly undervalued the Company's successful defense." *Id.* Finally, the district court found that all parties were partly at fault for the underlying dispute, that their uncooperative attitudes made it necessary to resolve the matter by a trial, and that "[t]he parties are jointly responsible for the filing and continuation of this action." *Id.* at 720, 117 P.3d at 124. We held, "It is improper to allow such considerations to play a part in determining who prevailed. The court 'may not use the award or denial of attorney fees to vindicate his sense of justice beyond the judgment rendered on the underlying dispute between the parties.'" *Id.*

In *Eighteen Mile Ranch*, we did not hold that if a plaintiff recovers more than a nominal amount on its claim and defeats a counterclaim, it is as a matter of law the prevailing party in the litigation. That is shown by our decision in *Hobson Fabricating Corp. v. SE/Z Constr., LLC*, 154 Idaho 45, 294 P.3d 171 (2012). The Division of Public Works had hired SE/Z Construction as the general contractor on a project, and SE/Z Construction had awarded a subcontract to Hobson Fabricating. *Id*. at 47, 294 P.3d at 173. Over one year later and before the project was completed, the Division of Public Works terminated its contract with SE/Z Construction, and it in turn terminated its subcontract with Hobson Fabricating. *Id*.

Hobson Fabricating and SE/Z Construction agreed to jointly pursue their respective claims against the Division of Public Works and to jointly defend against its claims. *Id*. Hobson Fabricating filed an action for over $1.5 million against the Division of Public Works and against SE/Z Construction. *Id*. Hobson Fabricating added SE/Z Construction as a defendant in order to assert a pass-through claim against the Division of Public Works. *Id*. SE/Z Construction filed a cross-claim against the Division of Public Works on behalf of itself and Hobson Fabricating totaling $1,973,107.38. *Id*. The bulk of the damages sought by SE/Z Construction on its behalf and on behalf of Hobson Fabricating was based upon an attempt to convert the fixed-price contract into a cost-plus contract. *Id*. at 50, 294 P.3d at 176. The Division of Public Works answered and filed a counterclaim against Hobson Fabricating and a cross-claim against SE/Z Construction for more than $2.6 million. *Id*. at 47, 51, 294 P.3d at 173, 177.

On motions for partial summary judgment, the district court dismissed the claims between Hobson Fabricating and the Division of Public Works because there was no contractual relationship between these parties, *id*. at 47–48, 294 P.3d at 173–74, and the court later ordered that the Division of Public Works could not pursue its claims because it had failed to provide notice and an opportunity to cure, *id*. at 48, 294 P.3d at 174. The court also ruled that the damages sought by SE/Z Construction would be calculated based upon the contract's fixed price terms rather than by the "total cost method" asserted by SE/Z Construction. *Id*. That left only SE/Z Construction's claim of $1.9 million against the Division of Public Works. The parties then settled their substantive claims by the Division of Public Works agreeing to pay SE/Z Construction $225,000 and submitted briefs to the court on the issue of costs and attorney fees. *Id*. The court found that the parties had each prevailed in part and that there was no prevailing party. *Id*. Hobson Fabricating and SE/Z Construction then appealed.

24

SE/Z Construction argued on appeal that the district court erred in finding that it was not a prevailing party because it was only seeking to recover $302,941.70 for itself against the Division of Public Works and it received $225,000. *Id*. at 49, 294 P.3d at 175. This Court held that the prevailing party analysis with respect to SE/Z Construction must include the entire $1.9 million as being its claim, even though it was seeking to recover the bulk of that amount on behalf of Hobson Fabricating. *Id*. at 50, 294 P.3d at 176. Thus, this Court held that the issue was whether it "must determine whether the district court abused its discretion by not finding the Contractors [SE/Z Construction and Hobson Fabricating] to be the overall prevailing party when they defeated DPW's cross-claim and received $225,000 in settlement for their $1.9 million dollar claim." *Id*. at 50, 294 P.3d at 176. We noted that "[b]oth a party's successes in bringing claims and in defending against them are important to the prevailing party analysis." *Id*. We held that the district court did not abuse its discretion. In doing so, we stated:

> Because the district court considered this final result in relation to the relief sought by the parties, the multiple claims and issues between the parties, and the extent to which each had prevailed on those issues, it did not abuse its discretion by finding that both parties prevailed in part. Therefore, this Court affirms the district court's order that each party bear its own costs and fees.

*Id*. at 51, 294 P.3d at 177.

In the instant case, the district court recited the correct standard for determining the prevailing party and conducted the same analysis as we recited in the *Hobson Fabricating* case. It considered the final result in relation to the relief sought by the parties, the multiple claims and issues between the parties, and the extent to which each had prevailed on those issues. It noted that American Semiconductor sought to recover $1,025,087 from the engineers and Sage, but only recovered $195,175, and that the engineers and Sage sought to recover $76,975.25 on their counterclaims, but recovered nothing. Obviously, American Semiconductor was not satisfied with its recovery because it filed this appeal seeking a new trial on damages. "The district court's determination of prevailing party status for the purpose of awarding attorney fees and costs is within the court's sound discretion, and will not be disturbed on appeal unless there is an abuse of discretion." *Id*. at 49, 294 P.3d at 175. American Semiconductor has not shown that the district court abused its discretion in determining that there was no prevailing party in this case.

## VI.
## Is Either American Semiconductor or the Engineers and Sage Entitled to an Award of Attorney Fees on Appeal?

American Semiconductor seeks an award of attorney fees on appeal against the engineers and Sage pursuant to the terms of the engineers' contracts with American Semiconductor and Idaho Code section 12-120(3). Because American Semiconductor is not the prevailing party on appeal, it is not entitled to an award of attorney fees.

The engineers seek an award of attorney fees on appeal pursuant to their contracts with American Semiconductor, Idaho Code section 12-120(3), and Idaho Code section 12-121. The Employee Confidentiality Agreement executed between each engineer and American Semiconductor included a provision stating, "The prevailing party shall be entitled to reasonable attorneys' fees and costs incurred in connection with such litigation." The engineers are entitled to an award of attorney fees on appeal pursuant to this provision in their contracts with American Semiconductor. Because they are entitled to an award of attorney fees on appeal under their contracts with American Semiconductor, we need not address whether they are also entitled to an award of attorney fees under Idaho Code sections 12-120(3) and 12-121.

Sage seeks an award of attorney fees on appeal pursuant to Idaho Code section 12-121. "In normal circumstances, attorney fees will only be awarded [under this statute] when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). We do not find that this appeal was brought or pursued frivolously, unreasonably, or without foundation as to Sage, and therefore we do not award it attorney fees under this statute.

## VII.
## Conclusion.

We affirm the judgment of the district court. We award Respondents costs on appeal and we award Respondents other than Sage attorney fees on appeal.


Chief Justice BURDICK, and Justices JONES, HORTON and BRODY CONCUR.